UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


COMCAST OF THE SOUTH, a General )
Partnership and COMCAST OF GEORGIA, )
INC., )
    Plaintiffs, )
     )
v. )   No. 3:03-CV-481
     )   Judge Phillips
DAVID L. MCCULLAR, )
    Defendants. )


## MEMORANDUM OPINION

This is an action by providers of cable television programming seeking declaratory and injunctive relief and monetary damages against defendant for distributing unauthorized "pirate" cable television descrambling devices and equipment in violation of Federal statutes. Currently pending before the court is plaintiffs' motion for summary judgment. For the reasons which follow, plaintiffs' motion will be granted.

### Comcast's Business

Plaintiffs (collectively referred to as "Comcast") are the owners and operators of a cable television system used for the signal reception, generation and transmission of video programming to subscribers within the State of Tennessee and in forty (40) other states nationwide, pursuant to a franchise to operate the cable system granted by the Tennessee Board of Public Utilities.

Comcast offers cable television services to subscribers who request and pay for them. Comcast's programming is offered to its subscribers in packages of programming services. "Basic" and "Standard" are packages of programming services that a subscriber receives at a monthly rate. Subscribers may also elect to purchase certain premium programming services such as Cinemax, Home Box Office, and Showtime, for an additional monthly charge per service. Additionally, Comcast offers Pay-Per-View programming, a service enabling subscribers to purchase individual movies, sporting events, or other entertainment for a per event fee over and above the subscriber's regular monthly fee. Each subscriber is entitled to receive only the level of programming services that he selects and purchases.

The signals for all of Comcasts' cable television services are transmitted from their point of origin to Comcast's reception facilities from orbiting satellites and other means of over-the-air radio communication. Comcast then retransmits these signals from its reception facilities to subscribers' homes through a network of cable wiring and equipment (the "System"). In order for a subscriber to receive these transmitted cable television signals on his television set, Comcast provides its subscribers with a device known as a "converter," which converts the multiple signals simultaneously transmitted over the System into different "channels" which can be viewed on subscriber's television sets.

To prevent subscribers from receiving programming services for which they have not paid, Comcast encodes or "scrambles" the signals for specific programming services. Subscribers purchasing scrambled programming services are provided with an

2

addressable converter. The addressable converter decodes the scrambled services so that the programming selected and purchased can be viewed clearly on a subscriber's television set. Programming services not purchased will continue to be scrambled and therefore will not be viewable on the subscriber's television set.

Comcast's System is "addressable," which means that subscribers' converters are programmed by a central computer to authorize viewing of purchased services. Each subscriber who purchases services that are scrambled would have his converter programmed by Comcast's central computer to receive only those services selected and purchased. Encoding (scrambling) is a security method employed by Comcast and other cable television operators to prevent subscribers from receiving services for which they have not paid. It is possible for a dishonest individual to install an unauthorized or "pirate" descrambling device onto Comcast's cable television system or otherwise tamper with Comcast's equipment in order to receive Comcast's scrambled programming without authorization and without making payment therefore.

Pay-Per-View, which is one of the scrambled services, includes selections that typically range in cost from approximately $4.00 to $49.99. Pay-Per-View is available throughout the day on a per event or movie basis. Premium services range in cost from approximately $7.00 to $13.00 per month per service. A pirate descrambling device could conceivably steal hundreds of dollars worth of Comcast's premium and Pay-Per-View services each month. Theft of Comcast's cable television service impacts negatively on Tennessee, and every one of the forty (40) states in which Comcast does business, which

3

franchises Comcast to operate cable television systems and which derives franchise fees from Comcast's gross revenues. The lost cash flow to Comcast resulting from the sale and use of "pirate" descrambling devices has an adverse impact on its ability to purchase and maintain a high quality of programming services for its subscribers.

Comcast's cable television programming services are private telecommunication signals that are not intended for public use or enjoyment without Comcast's prior authorization. The maintenance of unauthorized connections and use of "pirate" descrambling devices could result in signal "leakage," which could violate FCC regulations, as well as degradation of Comcast's signal and other service problems, and for which Comcast may suffer the imposition of substantial fines and other sanctions.

Defendant's Business

In or about August 2003, an investigation was commenced by Comcast's security team in Atlanta, Georgia involving a company called "NHProducts4U" which was distributing unauthorized descrambling devices on eBay. Comcast conducted an undercover investigation, which included purchases of the devices from defendant. They then tested the devices and determined that they were designed to descramble the scrambled premium and Pay-Per-View programming services offered by Comcast. Over the course of the investigation it was determined that David M. McCullar was the individual behind this operation and a lawsuit was commenced. Subsequent to the filing of the original complaint, Comcast identified two additional individuals involved in the manufacture, modification, sale and/or distribution of unauthorized "pirate" cable television

4

descrambling devices with David M. McCullar. These individuals, in concert with David M. McCullar, were selling the devices over the internet, and transacting business utilizing PayPal, Inc. Comcast was granted leave to file an amended complaint adding defendants Michael D. Morgan and David L. McCullar[1] to this action.

A review of the records obtained by Comcast's investigators, revealed that David L. McCullar (hereinafter McCullar) was actively involved in the sale and distribution of unauthorized cable descrambling equipment, specifically, the Clearmax 3000 Cable Descrambler, the Clearmax 6000 Cable Descrambler, the "Davinci" Cable Descrambler, and the "CoolSonic" Cable Descrambler. The Clearmax 3000, Clearmax 6000, Davinci and CoolSonic descramblers are all "universal" nonaddressable descramblers, meaning that they are capable of descrambling scrambled channels on any cable system regardless of cable service provider.

In 2003, McCullar shifted his sale and distribution of unauthorized cable descrambling equipment from individual auction sales to "bulk" sales, including the sale of privacy chips and sound boards. Privacy chips and sound boards are attached to the internal operating systems of the standard converter box, thus enabling the converter to descramble or decrypt previously scrambled or encrypted programming. McCullar and the individuals with whom he was conducting business repeatedly described the items being sold/purchased as descramblers. A descrambler allows an individual to steal cable

---

[1] David L. McCullar, the remaining defendant in this action, is the father of David M. McCullar, the original defendant.

services (programming) without the knowledge or consent of the cable service provider. There is no significant legitimate market for any of the items sold by McCullar and the sole purpose of these items is to be used in whole or in part to descramble Comcast's encoded cable television signal.

> McCullar utilized the following disclaimer language on his auction pages:
>
> Purchaser must comply with all local, state and federal laws regarding the ownership of cable TV equipment. You must register this unit with your local cable provider. The use of this equipment is for the sole purpose of owning and not leasing this equipment, any unauthorized or illegal use of this equipment is strictly prohibited. It is not the intent of the seller that this equipment be used for unauthorized cable service or any defrauding of cable service providers. Void where prohibited by law.

The language continues with McCullar's "Money Back Guarantee," specifically:

> These are NEW units and work on 98% of all systems. *30 Day Money Back Guarantee!* Void if unit is abused*

On or about November 20, 2003, Comcast issued a subpoena to PayPal, Inc., for any and all records of electronic payments and sales conducted from or related to eBay accountholder "NJProducts4U", real name David L. McCullar. In response to the subpoena, PayPal, Inc., produced account information for David McCullar at 2611 Wynmoor Circle, Knoxville, Tennessee 37931. The information received from PayPal revealed that McCullar sold and distributed unauthorized cable descrambling equipment, specifically, the Clearmax 3000 Cable Descrambler, the Clearmax 6000 Cable Descrambler, the "Davinci" Cable Descrambler and the "CoolSonic" Cable Descrambler.

6

The records show the total amount of gross sales generated by McCullar through his electronic sales of unauthorized cable descrambling equipment as $81,245.45.

Comcast has moved for summary judgment in the amount of $81,245.45 for damages, and for enhanced damages in the amount of $50,000.00, as well as for a permanent injunction pursuant to 47 U.S.C. § 553(c)(2)(C).

Analysis

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case

7

with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

The Cable Communications Act (the "Act") prohibits anyone from intercepting or assisting others in intercepting communications services offered over a cable system. 47 U.S.C. § 553(a)(1). The Act is designed to "protect the revenue of television cable companies from unauthorized reception of their transmissions." *United States v. Coyle,* 943 F.2d 424, 427 (4th Cir. 1991). The prohibition against "assisting" in intercepting unauthorized transmissions includes the illegal manufacture and sale of "pirate" descrambling devices.[2] 47 U.S.C. § 553(a)(2).

The Act applies to the sale of cable descramblers. Section 553 is "primarily aimed at preventing the . . . distribution of so-called black boxes and other unauthorized converters which permit reception of cable service without paying for the service." *Storer Comm. Inc. V. Mogel*, 625 F.Supp. 1194, 1198 (S.D.Fla. 1985) (quoting H.R.Rep. No. 98-934, 98th Cong., 2d Sess. 84 (1984). Several courts have interpreted Section 553 to prohibit sales of cable descramblers identical to those sold by McCullar, if the seller knew or intended that the device would be used for unauthorized reception of cable television programing services. *See, e.g., Time Warner Cable v. Freedom Electronics, Inc.,* 897 F.Supp. 1454, 1459 (S.D.Fla. 1995); *Storer,* 625 F.Supp at 1198; *Continental Cablevision,*

---

[2] The term "assist in intercepting or receiving" includes the manufacture or distribution of equipment that the manufacturer or distributor intends to be used for the unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1). 47 U.S.C. § 553(a)(2).

8

*Inc. v. Poll,* 124 F.3d 1044, 1047 (9th Cir. 1997); *United States v. Norris*, 88 F.3d 462, 466 (7th Cir. 1996); *International Cablevision, Inc. v.* Sykes, 997 F.2d 998, 1003-1005 (2nd Cir. 1993); *United States v. Coyle,* 943 F.2d at 427; *United States v. Gardner,* 860 F.2d 1391, 1398-99 (7th Cir. 1988); *Intermedia Partners Southeast v. QB Distributors, LLC,* 999 F.Supp. 1274, 1281 (D.Minn. 1998); *Time Warner Cable v. Cable Box Wholesalers, Inc.,* 920 F.Supp. 1048 (D.Ariz. 1996).

The business of the defendant in this case is indistinguishable from that of most cable descrambler sellers found liable for violations of the Act. Since McCullar does not dispute that he sold pirate descrambling devices into Comcast's franchise area, the issue thus becomes whether the defendant's purpose in selling descramblers was to permit customers to steal cable television programming services from cable television service providers.

The best evidence of a defendant's true intent is the nature of the "pirate" devices sold. Selling non-addressable descramblers with installation instructions and representations that it can get all of the premium and Pay-Per-View channels of a cable television service provider can have only one purpose: "to enable the purchaser to receive and unscramble programming services offered by a cable company without notifying the cable company and without paying for the services." *TKR Cable v. Cable City Corp.,* 1996 WL 465508 at *7 (D.N.J. 1996); *aff'd* 267 F.3d 196 (3rd Cir. 2001); *see also, Subscription Television v. Kaufmann,* 606 F.Supp. 1540, 1542 (D.D.C. 1985) (finding the only reason to remove the addressability function from a decoder device is to "enable a user to receive

9

and unscramble an STV signal without notifying the signal provider"); *Continental Cablevision v. Poll,* 124 F.3d at 1047 (finding sale of non-addressable descrambling devices to be evidence of seller's intent to assist in the interception of cable services).

In the instant case, McCullar was clearly engaged in the business of selling unauthorized cable descramblers for profit. It is evident from the exhibits attached to Comcast's motion that McCullar knew and intended that the devices he was selling would be capable of descrambling Comcast's scrambled programming services offered over its cable systems. The type of cable descrambler boxes sold by McCullar have no legitimate business purpose other than to intercept cable television programming without the knowledge or consent of Comcast. Additionally, McCullar's intent to sell and distribute devices capable of descrambling Comcast's programming is further evidenced by the fact that he also sold the corresponding privacy chips and sound boards capable of descrambling protected (scrambled/encrypted) signals.

McCullar included disclaimer provisions and statements with his descrambler sales. McCullar relies upon the disclaimers to shield him from liability, and attempts to shift culpability to his customers. However, McCullar's use of a disclaimer does not shield his liability. It is a common business practice of pirate decoder vendors to attempt to limit their liability with a disclaimer. However, every reported decision in which this "disclaimer defense" has been raised holds that disclaimers do not shield sellers of cable descramblers from liability. *See, e.g., InterMedia Partners Southeast v. OB Distributors, LLC,* 999 F.Supp. 1274, 1282 (D.Minn. 1998); *Time Warner,* 897 F.Supp. at 1459; *Subscription*

*Television v. Kaufmann,* 606 F.Supp. 1540, 1542-43 (D.D.C. 1985). Indeed, many courts have found that a pirate decoder seller's use of such disclaimers reflects their awareness of the illegality of their business. *See United States v. Gardner,* 860 F.2d 1391, 1396 (7th Cir. 1988) ("Whatever the attempted legal effect of the defendant's disclaimer, the ultimate trier of fact could easily find that it was a transparent attempt to deny the patent illegality of the defendant's acts . . . " *citing ON/TV of Chicago v. Julien,* 763 F.2d 839, 844 (7th Cir. 1985); *Columbia Cable TV Co., Inc. v. McCary,* 954 F.Supp. 124, 127 (D.S.C. 1996) ("This court does not find that the disclaimer negates any intent to assist others in the unauthorized access of cable programming. In fact, the court finds that the disclaimer demonstrates knowledge of the most probable if not only use of the devices").

Defendant's money back guarantee provides further evidence of his intent. McCullar offered a 30-Day Money Back Guarantee with each of his descrambler sales. Courts have found a "money back guarantee" in the world of cable descrambler sales to be additional evidence of intent to provide customers with a cable box that could effectively descramble a cable system's scrambled cable television programming. *Time Warner Entertainment/Advance-Newhouse Partnership v. Worldwide Electronics, LLC,* 50 F.Supp2d 1288, 1296 (S.D.Fla. 1999); *TKR Cable v. Cable City Corp.,* 1996 WL 465508 (The court, presented with evidence of a similar return policy, stated that the "defendant's return policy provides additional evidence of their intent to enable theft of programming service").

11

Finally, McCullar argues that the cable descramblers he sold had legal uses or were sold as replacement cable boxes for the purpose of avoiding rental fees. McCullar's argument is unpersuasive. A few legal uses does not insulate the seller of descramblers from civil liability where the defendant knew and intended that buyers would use the descramblers for the interception of cable programming. *Comcast of Illinois v. Platinum Electronics,* 2004 WL 2137363 at *6; *Time Warner,* 50 F.Supp2d at 1297; *U.S. v. Beale,* 681 F.Supp. 74 (D.Me. 1988); *Storer v. Mogel,* 625 F.Supp. At 1194; *United States v. Gardner,* 860 F.2d 1391 (7th Cir. 1988).

The court notes for the record that, in response to Comcast's summary judgment motion, McCullar failed to produce any objective evidence of the legality of his business, as opposed to his stated intent and belief. This absence of evidence to support defendant's self-serving assertions regarding the supposed legality of his business is similar to that noted by the court in *Cablevision Systems Corp. V. Muneyyirci,* 876 F.Supp. 415, 419 (E.D.N.Y. 1994). In *Muneyyirci*, the court, in granting summary judgment under 47 U.S.C. § 605 for 390 sales of pirate decoders, expressly relied on the failure of the defendants therein to make any showing of the legality of their business. Most telling in the instant case, is McCullar's failure to challenge Comcast's summary judgment motion by introducing <u>any</u> evidence suggesting that certain sales were legal, not one invoice, not one purchaser, not one affidavit, not one record of any kind establishing legitimate sales to an authorized distributor, or anyone.

Defendant McCullar has not produced any evidence of legitimate sales of descramblers. His failure to present any evidence of legitimacy, in the face of Comcast's convincing presentation, including evidence that there is no legitimate retail market for the descramblers, leads this court to conclude that there is no genuine issue of fact with respect to the legitimacy of sales of the descramblers to individuals. As there is no genuine issue of fact with respect to McCullar's liability to Comcast under 47 U.S.C. § 553, summary judgment in favor of Comcast will be granted.

<u>Damages</u>

*Profits.* Once liability has been determined, the court may award the aggrieved party "any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages." 47 U.S.C. § 553(3)(A)(1). All of the defendant's profits may be awarded to the plaintiff, whether or not the profits are derived from the sale of cable descramblers into the geographical areas served by the plaintiff's cable system areas. *See Time Warner Entertainment,* 50 F.Supp.2d at 1300; *CSC Holdings, Inc. V. KDE Electronics Corp.,* 2000 WL 284005 (N.D.Ill. 2000). In determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit not attributable to factors other than the violation. Further, the Act provides for individual liability. *KingVision Pay Per View v. Muths, Inc.,* 2001 WL 218909 (N.D.Ill. 2001). The Act defines the term "person" as an "individual, partnership, association, joint stock company, trust, corporation, or government entity." 47 U.S.C. § 522(15).

13

McCullar states that Comcast had made "an egregious error" in stating the gross profits for his cable box sales because he sold "numerous items that were not cable boxes." According to the documents obtained from PayPal, Inc., of the 752 transactions documented, McCullar sold WINDOWS 98 SE computer programs to 35 persons. In 2002 and 2003, McCullar utilized this account to purchase golf balls and golf clubs for his own personal use. Also included in these transaction charts are the numerous withdrawals made by McCullar of his auction profits. There is no evidence that McCullar's remaining transactions involved anything other than authorized cable television descramblers and equipment. Once Comcast demonstrates evidence of gross revenues from unauthorized cable box sales, the burden shifts to McCullar to rebut same. McCullar has the burden of submitting evidence to dispute Comcast's calculations, as well as any deductible expenses he incurred in operating his business. McCullar's unsworn statements regarding profits are insufficient to meet his burden. The transaction logs for 2002 and 2003 do not show that McCullar was selling any items other than cable descramblers. The evidence in this case, largely undisputed, establishes that defendant was involved in the sale and distribution of unauthorized cable descramblers. Having determined that violations of 47 U.S.C. § 553 occurred, the court finds that Comcast shall be entitled to recover from defendant all of defendant's profits from his pirate descrambler sales business in the amount of $81,245.45.[3]

---

[3] This amount represents the amount shown by McCullar's PayPal records as the gross profits during the applicable period.

14

*Enhanced Damages.* In addition to its request for all McCullar's profits, Comcast requests enhanced damages. The Act permits "the court in its discretion to increase the award of damages by an amount of not more than $50,000, 47 U.S.C. § 553(c)(3)(B), when the court finds that a defendant who has violated Section 553 acted "willfully and for purposes of commercial advantage or private financial gain." *Freedom Electronics,* 897 F.Supp. At 1460; *Poll,* 124 F.3d at 1049. The standard for willfulness in a civil case requires proof of "a disregard for the government statute and an indifference to its requirements." *Trans World Airlines v. Thurston,* 469 U.S. 111, 127 (1985).

In this case, McCullar operated his business selling descramblers willfully and with full knowledge of the damages such descramblers caused to cable operators. In assessing the full measure of enhanced damages against him, the court gives effect to Congress' intent that distributors of illegal descrambling equipment should bear substantial liability. The uncontested facts show that McCullar deliberately sold, marketed, and distributed unauthorized cable descramblers, making substantial profits in doing so. The maximum assessment of $50,000 enhanced damages is therefore appropriate.

*Costs.* A court may award a prevailing party recovery of full costs, including investigative costs and reasonable attorney's fees. 47 U.S.C. § 553(c)(2)(C). In this case, however, Comcast stated in its motion that in the event the court finds in favor of Comcast and awards Comcast damages, Comcast waives its right to recover attorney's fees and costs of this suit as they pertain to defendant David L. McCullar. Accordingly, Comcast will not be awarded its attorney's fees and costs of this action against David L. McCullar.

*Permanent Injunction.* A court may grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations." 47 U.S.C. § 553(c)(2)(A). In this case, issuance of a permanent injunction is justified. Defendant's business was built upon defrauding the cable industry by providing the means necessary to steal cable television programming. Further, a risk exists that defendant will continue such conduct in the future. McCullar's assertions that his activities are permitted by law, taken along with his outright denials of any wrongdoing, even in the face of overwhelming legal precedent and factual proof, suggest that he might well commence operations again under some other corporate shell. Unless the defendant is made to feel the consequences of his wrongdoing, other cable operators will be forced to commence separate actions against the defendant to protect their interests. Accordingly, the defendant will be enjoined from entering this illegal market in any capacity In the future. *See e.g., Time Warner Entertainment,* 50 F.Supp.2d at 1301 (permanent injunction issued under Section 553); *Columbia Cable TV,* 954 F.Supp at 128 (permanent injunction issued); *Poll,* 124 F.3d at 1046 (referencing district court's entry of permanent injunction under Section 553).

## Conclusion

For the reasons stated above, plaintiffs' motion for summary judgment [Doc. 53] is **GRANTED** as follows: Comcast's claim for damages totaling $81,245.45 is **GRANTED;** Comcast's claim for enhanced damages totaling $50,000 is **GRANTED;** and defendant, David L. McCullar, is permanently enjoined from the manufacture, modification, and/or sale/distribution of cable descramblers pursuant to 47 U.S.C. § 553(c)(2)(A).

Pursuant to Comcast's waiver, Comcast shall not recover attorney's fees and its costs in this action.

**ENTER:**

      s/ Thomas W. Phillips
United States District Judge